IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HORACE JOHNSON | CRIMINAL ACTION<br><br>NO. 20-299-KSM-2 |

MEMORANDUM

**MARSTON, J.**                                                                                                                 **July 6, 2022**

Defendant Horace Johnson is currently serving a 46-month sentence at the Federal Prison Camp in Lewisburg, Pennsylvania[1] ("FPC Lewisburg") for distribution of 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). (Doc. No. 85.) He has moved for compassionate release, asking that he be transferred to home confinement because his underlying medical conditions leave him "vulnerable to death and serious severe hospitalization" from COVID-19. (Doc. No. 96 at p. 2.) The Government opposes his motion. (Doc. No. 98.) For the reasons discussed below, Johnson's motion is denied.

I.

On July 19, 2020, Johnson and his co-Defendant, William Mack, sold more than 439 grams of methamphetamine to an FBI confidential source. (Sept. 14, 2021 Change of Plea Hr'g. Tr. at 10:7–18, 48:7–50:11; Presentence Report ("PSR") at ¶¶ 13–16.) At the time, Johnson had multiple criminal convictions on his record, including drug trafficking and firearms offenses. (Doc. No. 78 at p. 10; PSR at ¶¶ 33–36.)

On May 20, 2021, Johnson pleaded guilty on indictment to distribution of 50 grams or

---

[1] FPC Lewisburg is a minimum security satellite camp for United States Penitentiary Lewisburg ("USP Lewisburg"). Combined, the facilities have a total inmate population of 1,130 inmates, 807 of whom are at the USP and 323 of whom are at the Camp.

more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and to aiding and abetting in violation of 18 U.S.C. § 2. (Doc. No. 46 at ¶ 1.) The Court entered Judgment against Johnson and sentenced him to 46 months' imprisonment, followed by four years of supervised release. (Doc. No. 85 at pp. 2–3.)

Johnson surrendered himself into custody on January 5, 2022. (*Id.* at p. 2.) Approximately two months into serving that sentence, he submitted a Request for Administrative Remedy, seeking transfer to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). (Doc. No. 96 at ¶ 6; *id.* at p. 2.) In that request, Johnson asserted that he has comorbidities—obesity and sleep apnea—that leave him "vulnerable to death and serious severe hospitalization from [the] Omicron varia[nt of] COVID-19 infection." (*Id.* at p. 2.) On March 25, 2022, the warden at FPC Lewisburg found Johnson is "medically vulnerable with a BMI of 45" and deemed Johnson "appropriate for home confinement placement under the CARES Act." (Doc. No. 96 at p. 3.) Although the warden granted Johnson's request and stated he would recommend Johnson for placement in home confinement, the Bureau of Prison's Central Office ultimately denied Johnson's request on May 13, 2022. (Doc. No. 98 at p. 2.)

On June 3, Johnson moved for compassionate release with this Court. (Doc. No. 96.) The government opposes the motion and has submitted a copy of Johnson's medical records under seal. (Doc. Nos. 98, 99.)

## II.

Johnson asks us to alter the terms of his sentence and transfer him to home confinement. "[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." 18 U.S.C. § 3582(c); *see also McMillan v. United States*, 257 F.

App'x 477, 479 (3d Cir. 2007). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, provides such authorization, "empower[ing] a district court to modify a term of imprisonment on a defendant's motion" after the defendant has exhausted his administrative remedies.[2] *United States v. Towel*, Criminal Action No. 17-519-6, 2020 WL 2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Tartaglione*, Criminal Action No. 15-491, 2020 WL 3969778, at *3 (E.D. Pa. July 14, 2020); *see also United States v. Pangelinan*, Criminal Action No. 17-483, 2020 WL 3892961, at *1 (E.D. Pa. July 9, 2020) ("The First Step Act's amendments to Section 3582(c) 'allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons.'" (citations omitted)).

>   Under § 3582(c)(1)(A), a court
>
>> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>>
>> Extraordinary and compelling reasons warrant such a reduction . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). Section 1B1.13 of the Sentencing Guidelines mirrors the statute, allowing a court to reduce a defendant's sentence under § 3582(c)(1)(A) when the court, after considering the § 3553(a) factors, determines that "extraordinary and compelling reasons

---

[2] A defendant may move for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that Johnson has exhausted his administrative remedies. (Doc. No. 98 at p. 2.)

3

warrant the reduction"; "the defendant is not a danger to the safety of any other person or to the community"; and "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; *see also Towel*, 2020 WL 2992528, at *3.

### III.

Johnson argues that the COVID-19 pandemic presents an "extraordinary and compelling reason" justifying alteration of his sentence.

Congress did not define the phrase "extraordinary and compelling reason" as used in § 3582(c)(1)(A), except to advise that "'rehabilitation [of the defendant] alone' does not suffice." *Towel*, 2020 WL 2992528, at *3 (citing 18 U.S.C. § 944(t)). Instead, Congress delegated that task to the United States Sentencing Commission. 18 U.S.C. § 944; *see also Tartaglione*, 2020 WL 3969778, at *4. The Sentencing Commission's commentary to § 1B1.13 enumerates four "extraordinary and compelling" reasons that could justify a sentence reduction: (1) certain serious medical conditions (i.e., a terminal illness or a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care" and "from which he or she is not expected to recover"); (2) the defendant's age (over 65), if he or she is also experiencing a serious deterioration of health and has served at least ten years or 75% of his or her sentence; (3) the defendant's family circumstances; or (4) other reasons as determined by the Director of the Bureau of Prisons or the courts. U.S.S.G. § 1B1.13 Application Note 1; *United States v. Rodriguez*, Criminal Action No. 17-618, 2020 WL 3447777, at *2 (E.D. Pa. June 24, 2020); *see also United States v. Justis*, Criminal Action No. 15-416, 2020 WL 43655596, at *2 (E.D. Pa. July 29, 2020) (citations omitted) ("As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now conclude that the catch-all category of 'other reasons' applies not only to the BOP Director, but also to courts.").

In the context of the COVID-19 pandemic, when considering whether "extraordinary and compelling reasons" exist, "courts have generally required defendants to show two things: (1) advanced age or serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed." *Justis*, 2020 WL 43655596, at *3 (citation omitted); *see also United States v. Feiling*, Criminal No. 3:19cr112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) ("In the context of COVID-19, courts have found extraordinary and compelling reasons for compassionate release where an inmate shows *both* a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." (emphasis added)). "The defendant bears the burden of proving that extraordinary and compelling reasons exist." *United States v. Thornton*, Criminal No. 2:18-167-1, 2020 WL 4368155, at *3 (W.D. Pa. July 29, 2020); *Rodriguez*, 2020 WL 3447777, at *4 n.3. Johnson has not satisfied that burden here.

First, Johnson has not shown that he is particularly susceptible to COVID-19. Johnson alleges that he suffers from underlying medical conditions, including obesity and obstructive sleep apnea, that cause him to experience shortness of breath, sharp chest pains, and difficulty walking. (Doc. No. 96 at ¶ 6; *id.* at p. 2.) A review of Johnson's medical records confirms that he is prediabetic and has a body mass index ("BMI") of 45.1. (Doc. No. 99 at p. 11, 18.) With a BMI of 45.1, Johnson suffers from severe obesity, a medical condition recognized by the CDC as placing him at increased risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022) (last visited July 1, 2022) ("[S]evere obesity (BMI is 40 k/m² or higher) can make you more likely to get very sick from COVID-19. The risk of

severe illness from COVID-19 increases sharply with higher BMI."). And although Johnson does not discuss it, we note that he also suffers from severe opioid use disorder. Like obesity, substance use disorders increase an individual's risk of becoming very sick from COVID-19.[3] *See id.* ("Having a substance use disorder (such as alcohol, opioid, or cocaine use disorder) can make you more likely to get very sick from COVID-19.").

Although Johnson has shown that his underlying conditions place him at increased risk of becoming severely ill from COVID-19, we cannot view those conditions in isolation and to the exclusion of other evidence. Notably, other evidence in the record suggests that Johnson would suffer little to no effects should he contract COVID-19. Johnson's medical records show that he tested positive for COVID-19 during intake in early January 2022 and that he was placed in isolation for ten days. (Doc. No. 99 at pp. 11, 19–28, 46.) During that time, Johnson reported *no* symptoms, and the disease was marked "resolved" upon completion of the quarantine period. (*Id*.) Two months later, in March 2022, Johnson declined the COVID-19 vaccine when it was offered by BOP. (*See* Doc. No. 98 at p. 3.) These facts, which speak to Johnson's *personal risk* of becoming severely ill from COVID-19, bely a finding that Johnson is particularly susceptible to the virus. *See United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) ("[V]accination status is *directly relevant* to an inmate's health risk. . . . Given vaccine availability, a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling reason for release unless he can convincingly show that he is 'unable to receive or benefit from a vaccine' or that he 'remains vulnerable to severe infection, notwithstanding the vaccine.'" (quoting *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022)); *accord United States v. Lemons*, 15 F.4th 747, 751 (6th Cir.

---

[3] By contrast, the CDC has not identified obstructive sleep apnea as a medical condition that places a person at higher risk of severe illness from COVID-19.

2021) ("Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

Second, Johnson has not shown a "more than mere speculative risk of exposure to the virus" at FPC Lewisburg. *Feiling*, 2020 WL 1821457, at *7; *see also Thornton*, 2020 WL 4368155, at *4 ("The mere chance that Defendant may contract the virus . . . and be more susceptible to complications if he does so is not enough on its own to demonstrate extraordinary and compelling circumstances supporting release in this case."). In evaluating Johnson's overall susceptibility to experiencing complications from contracting COVID-19, we must consider the impact of the pandemic at FPC Lewisburg. When Johnson filed his motion on May 2, 2022, FPC Lewisburg was ranked a Level 3 operation because of "high community transmission rate of COVID-19 within the local area." (Doc. No. 96 at p. 4.) However, as of the date of this Order, the facility has been downgraded to a Level 1 operation. *See* https://www.bop.gov/locations/institutions/lew/ (last visited July 5, 2022). This is the best possible rating.[4] *See* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited July 5, 2022). In addition, *no* inmate or staff member at FPC Lewisburg is currently positive for COVID-19. *See* https://www.bop.gov/coronavirus/index.jsp (last visited July 5, 2022).

Given these figures, we cannot find that Johnson is at a high risk of exposure to the virus

---

[4] A facility will be placed at Level 1 if the medical isolation rate is less than 2%, the facility vaccination rate is equal to or greater than 65%, and the community transmission rate is less than 50 per 100,000 over the last 7 days.

7

at FPC Lewisburg. *See United States v. Ackerman*, Criminal Action No. 11-740-KSM-1, 2020 WL 5017618, at *8 (E.D. Pa. Aug. 25, 2020) ("In light of the BOP's successful mitigation strategies and the fact that zero prisoners currently have the virus at FCI Danbury, we hold that the conditions at FCI Danbury do not present an extraordinary and compelling reason justifying Ackerman's release."); *United States v. Esparza*, No. 1:16-cr-00122-DAD-BAM, 2020 WL 4805055, at *5 (E.D. Cal. Aug. 18, 2020) ("[I]t appears that in the past two months, the active COVID-19 cases at FCI Danbury have decreased significantly to the point of zero active cases among prisoners incarcerated at the prison. This development has convinced the court that the defendant's medical conditions . . . when considered in combination with the status of the virus outbreak at [the institution], do not constitute extraordinary and compelling reasons[.]").

In short, given that Johnson (1) had no complications when he had COVID-19 in January 2022, (2) declined the vaccine in March 2022, and (3) is housed at a Level 1 facility with zero active COVID-19 cases, we find that Johnson has failed to show extraordinary and compelling circumstances warrant alteration of his sentence.[5]

## IV.

For those reasons, we deny Johnson's Motion for Compassionate Release Pursuant to 18 U.S.C. 3624(c)(2) and 18 U.S.C. § 3582(c)(1)(A). An appropriate order follows.

---

[5] Because Johnson's claim fails at this juncture, we need not analyze whether he is a danger to the community or consider the § 3553(a) factors. *See, e.g.*, *United States v. McDonald*, Crim. Action No. 09-656, 2020 WL 3638280, at *3 n.4 (D.N.J. July 2, 2020); *United States v. Mathe*, Criminal Action Nos. 14-528,17-92, 2020 WL 3542177, at *6 (E.D. Pa. June 30, 2020) ("As Mr. Mathe cannot show an extraordinary and compelling reason, we need not proceed into further analysis of whether release comports with policy statements and evaluate Mr. Mathe's possible release by applying the factors under 18 U.S.C. § 3553(a)."); *United States v. Slone*, Criminal Action No. 16-400, 2022 WL 3542196, *7 (E.D. Pa. June 30, 2020) ("As Mr. Slone failed to present evidence of 'extraordinary and compelling' circumstances to warrant his release, we do not need to proceed into further analysis of the section 3553(a) factors nor do we need to evaluate whether his release would create 'a danger to the safety of any other person or to the community.'").